**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARVELL BARKER,<br>        Plaintiff, | Case No. |
| v. | |
| CITY OF CHICAGO, a municipal<br>corporation; CHICAGO POLICE OFFICER<br>JOHN DOE 1; and CHICAGO POLICE<br>OFFICER JOHN DOE 2,<br>        Defendants. | JURY TRIAL DEMANDED |

**COMPLAINT**

**INTRODUCTION**

1. This is an action for money damages brought pursuant to 42 U.S.C. § 1983 and Illinois law against the City of Chicago and two Chicago police officers, arising out of the officers' use of a moving police vehicle to strike Plaintiff MARVELL BARKER off of his bicycle, breaking both bones of his right forearm, when Plaintiff had committed no crime, posed no threat to anyone, and was given no lawful order or warning of any kind.

2. Plaintiff seeks compensatory and punitive damages, attorneys' fees, and costs to redress the deprivation of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution and by the laws of the State of Illinois.

**JURISDICTION AND VENUE**

3. This action arises under the Constitution of the United States and 42 U.S.C. §§ 1983 and 1988. This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4).

4.      This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b), because the events giving rise to Plaintiff's claims occurred within the Northern District of Illinois, and because the Defendants reside in this District.

**PARTIES**

6.      Plaintiff MARVELL BARKER is an adult resident of Chicago, Cook County, Illinois.

7.      Defendant CITY OF CHICAGO (the "City") is an Illinois municipal corporation that operates, manages, and controls the Chicago Police Department ("CPD"), and is the employer of the Defendant Officers. The City is responsible for the policies, practices, customs, training, supervision, and discipline of CPD and its officers.

8.      Defendant CHICAGO POLICE OFFICER JOHN DOE 1 was, at all relevant times, a duly appointed and sworn Chicago police officer acting within the scope of his employment and under color of state law. On information and belief, John Doe 1 was the driver of the police vehicle described herein and, on information and belief, was assigned to CPD's Sixth (Gresham) District. His true name is presently unknown to Plaintiff and will be substituted once ascertained through discovery. He is sued in his individual capacity.

9.      Defendant CHICAGO POLICE OFFICER JOHN DOE 2 was, at all relevant times, a duly appointed and sworn Chicago police officer acting within the scope of his employment and under color of state law. On information and belief, John Doe 2 was the passenger in the police vehicle described herein and, on information and belief, was assigned to

CPD's Sixth (Gresham) District. His true name is presently unknown to Plaintiff and will be substituted once ascertained through discovery. He is sued in his individual capacity.

10. Defendants John Doe 1 and John Doe 2 are referred to collectively as the "Defendant Officers." At all relevant times, each Defendant Officer acted under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois and the City of Chicago, and within the scope of his employment as a Chicago police officer.

**FACTUAL ALLEGATIONS**

11. On June 3, 2026, at approximately 3:40 p.m., Plaintiff was riding his bicycle in the vicinity of 84th Street and South Green Street, in a residential neighborhood on the South Side of Chicago where his late father had lived.

12. Plaintiff was riding lawfully and peacefully. He had committed no crime, possessed no weapon, contraband, or stolen property, and posed no threat to the Defendant Officers or to any other person.

13. As Plaintiff rode, an unmarked or unmarked-appearing police vehicle occupied by the two Defendant Officers began following closely behind him. Defendant John Doe 1 was driving the vehicle; Defendant John Doe 2 was in the front passenger seat.

14. The Defendant Officers did not activate the vehicle's emergency lights or siren. They did not identify a lawful basis for the stop, and they gave Plaintiff no command to stop, no warning, and no order of any kind.

15. Confused and alarmed at being followed, Plaintiff asked the officers why they were following him. The officers gave him no lawful response.

16. Plaintiff attempted to steer his bicycle toward the sidewalk and out of the path of the vehicle.

17. ]The police vehicle Defendant John Doe 1 was operating weighed several thousand pounds and was traveling under power when he directed it into Plaintiff's bicycle

18. Defendant John Doe 1 used the police vehicle itself as the instrument of force against Plaintiff, employing the weight and forward momentum of the vehicle to knock Plaintiff off of his bicycle and onto the pavement.

19. Plaintiff was riding an ordinary bicycle. He wore no helmet, protective padding, or other equipment, and his body was fully exposed to the impact of a motor vehicle, all of which was plainly visible to the Defendant Officers as they followed directly behind him.

20. Directing a moving motor vehicle into the body of an unprotected bicyclist carries a substantial risk of death or serious bodily injury, as the Defendant Officers knew or reasonably should have known.

21. Rather than permit Plaintiff to move aside, and without any order, warning, or attempt at any lesser means, Defendant John Doe 1 drove the police vehicle into Plaintiff's bicycle, striking the rear tire of the bicycle with the front bumper of the vehicle.

22. The force of the impact threw Plaintiff—who weighs approximately 215 to 220 pounds—over the handlebars of his bicycle and onto the concrete.

23. Plaintiff's right forearm struck the pavement with such force that both bones of the forearm fractured, and bone protruded through the skin in an open, compound fracture. Blood ran from the open wound.

24. At no point before striking Plaintiff did either Defendant Officer order Plaintiff to stop, warn him that force would be used, or attempt any means of stopping him other than ramming him with the vehicle.

25. . After the collision, the Defendant Officers exited their vehicle. One of the Defendant Officers stated words to the effect that they had to "hit" Plaintiff off of the bike in order to stop him.

26. After the collision, and while Plaintiff lay injured and bleeding on the ground, the Defendant Officers raised Plaintiff to his feet and directed him to remain at the scene. Plaintiff, who was seriously injured and in severe pain, did not feel free to leave and was not free to leave; the Defendant Officers thereby detained him.

27. Plaintiff, in severe pain and bleeding on the ground, asked the Defendant Officers to summon paramedics.

28. A CPD supervisor—described as a bald, white male lieutenant whose identity is presently unknown to Plaintiff—arrived at the scene and conferred with the Defendant Officers, but did not speak with Plaintiff or render aid to him.

29. Before the ambulance departed the scene with Plaintiff, the Defendant Officers left. On information and belief, the Defendant Officers prepared no truthful contemporaneous report accurately documenting their use of force against Plaintiff.

30. At no time did the Defendant Officers have probable cause, or any reasonable, articulable suspicion, to believe that Plaintiff had committed, was committing, or was about to commit any offense.

31. Plaintiff was transported by ambulance to a hospital, where he underwent approximately three hours of surgery to reset the fractured bones of his right forearm.

32. Surgeons implanted two metal plates and approximately eight to nine screws to hold the fractured bones in place, and Plaintiff received approximately thirty sutures. Plaintiff remained hospitalized for roughly three and one-half days.

33. Following his discharge, Plaintiff was placed in a cast, in which he remains, and he has undergone extensive follow-up medical treatment and physical therapy, requiring repeated hospital and clinic visits. He continues to suffer pain, swelling, limited range of motion, and an inability to make a fist or to fully use his right (dominant) hand and arm.

34. As a direct and proximate result of the Defendant Officers' conduct, Plaintiff has suffered and continues to suffer serious and permanent physical injury, disfigurement, physical pain, mental and emotional distress, medical expenses, and lost income, including his inability to return to his prior employment in automobile detailing and car-wash work.

**COUNT I**
**42 U.S.C. § 1983 — Fourth Amendment — Excessive Force**
**(Against the Defendant Officers)**

Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

35. The Defendant Officers' use of a moving motor vehicle to strike Plaintiff and his bicycle constituted a seizure of Plaintiff within the meaning of the Fourth Amendment, effected through the intentional application of physical force to Plaintiff's person.

36. The force used by the Defendant Officers was objectively unreasonable under the totality of the circumstances. Plaintiff had committed no crime, was unarmed, posed no threat of harm to the officers or others, and was given no order or warning. Ramming a bicyclist with a police vehicle under these circumstances was grossly disproportionate to any legitimate law-enforcement interest.

37. Defendant John Doe 1 directly used unreasonable force by driving the vehicle into Plaintiff. Defendant John Doe 2 is liable for the same seizure as an integral participant in, and by his failure to prevent, the unconstitutional use of force.

38. The Defendant Officers acted willfully, maliciously, and with reckless and deliberate indifference to Plaintiff's constitutional rights.

39. As a direct and proximate result, Plaintiff suffered the injuries and damages set forth above.

**COUNT II**
**42 U.S.C. § 1983 — Fourth Amendment — False Arrest and Unreasonable Seizure**
**(Against the Defendant Officers)**

Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

40. The Defendant Officers' intentional application of physical force to Plaintiff's body with the intent to restrain him, together with their subsequent direction that Plaintiff remain at the scene, effected a seizure and detention of Plaintiff within the meaning of the Fourth Amendment.

41. The Defendant Officers seized and detained Plaintiff without a warrant, without probable cause, and without any reasonable, articulable suspicion that Plaintiff had committed, was committing, or was about to commit any offense.

42. Because the seizure and detention of Plaintiff were effected without any lawful basis, they constituted a false arrest and an unreasonable seizure in violation of the Fourth Amendment as applied to the states through the Fourteenth Amendment.

43. The Defendant Officers acted willfully, maliciously, and with reckless and deliberate indifference to Plaintiff's constitutional rights, directly and proximately causing Plaintiff's injuries and damages.

## COUNT III
### 42 U.S.C. § 1983 — Failure to Intervene
### (Against the Defendant Officers)

Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

44. Each Defendant Officer had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights described above, but failed to take reasonable steps to do so.

45. Each Defendant Officer thereby failed to intervene to prevent the unlawful seizure and use of excessive force against Plaintiff, in violation of the Fourth and Fourteenth Amendments.

46. As a direct and proximate result of each Defendant Officer's failure to intervene, Plaintiff suffered the injuries and damages set forth above.

## COUNT IV
### 42 U.S.C. § 1983 — Municipal Liability (Monell)
### (Against the City of Chicago)

Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

47. The violation of Plaintiff's constitutional rights was caused by the policies, practices, and customs of the City of Chicago, and by the City's deliberate indifference in the training, supervision, monitoring, and discipline of its officers, each of which was a moving force behind the constitutional deprivations alleged herein.

48. At all relevant times, the City maintained interrelated de facto policies, practices, and customs that were a moving force behind the violation of Plaintiff's rights, including, on information and belief: (a) the use of excessive and unreasonable force, including force against persons who pose no threat and who have committed no crime;

(b) the dangerous, unjustified, and unauthorized use of motor vehicles as instruments of force and in pursuits, in violation of the Chicago Police Department's own vehicle and pursuit policies; (c) the failure of officers to accurately report, document, and investigate uses of force; and (d) a "code of silence," under which officers fail to report, and affirmatively conceal, the misconduct of fellow officers, and under which such misconduct routinely goes undisciplined.

### *Notice and the City's Deliberate Indifference*

49. The City has long had actual and constructive notice of these patterns and practices.

50.     The City's deliberate indifference is further reflected in a recurring pattern of Chicago police officers operating vehicles in a manner that strikes, injures, and kills persons, followed by the City's repeated failure to meaningfully investigate or discipline the officers responsible. Examples of such incidents include, but are not limited to, the following.

51.     On or about November 13, 2019, near 71st Street and Jeffery Boulevard in the South Shore neighborhood, a Chicago police officer operating a marked police sport-utility vehicle released the vehicle's brake and accelerated into Martina Standley, a pedestrian, knocking her to the ground and pinning her leg beneath the vehicle, where she remained for several minutes while officers did little to aid her. Ms. Standley suffered a traumatic brain injury and other severe injuries and later died. The City paid $3.25 million to settle the resulting wrongful-death action.

52.  On or about July 18, 2020, near the 3300 block of West Fullerton Avenue, an officer operating an unmarked Chicago police sport-utility vehicle drove onto a public sidewalk and struck a person who was walking with a bicycle. The incident was referred to the Civilian Office of Police Accountability for investigation.

53. On or about April 28, 2020, near 69th Street and Loomis Boulevard, a Chicago police officer driving a marked squad car disregarded a red traffic signal, collided with another vehicle, and then struck Eyraechel Meiang, a pedestrian, causing serious injuries. The City paid $400,000 to settle the resulting lawsuit.

54. On or about June 24, 2020, near Ashland Avenue and Irving Park Road, a Chicago police squad car traveling at approximately 89 to 101 miles per hour disregarded a red traffic signal and struck the vehicle of Guadalupe Franco-Martinez, killing her. The City paid $15 million to settle the resulting lawsuit.

55. The pattern of dangerous vehicle use is compounded by officers' repeated initiation of unauthorized vehicle pursuits in violation of CPD's own vehicle and pursuit policies— including operating unmarked vehicles, failing to activate emergency lights and sirens, and failing to notify dispatchers—and by the City's persistent failure to discipline the officers responsible.

56. On or about August 9, 2020, an officer initiated such an unauthorized pursuit in an unmarked vehicle, without activating lights or sirens and without notifying dispatchers, in violation of multiple CPD policies; the pursued vehicle struck Angela Parks, a pedestrian in a crosswalk near 31st Street and Wells Street, rendering her quadriplegic and causing her death. On information and belief, the officer who initiated that pursuit was not meaningfully disciplined and continued to serve, later as a detective.[1]

57. Similarly, on or about July 5, 2018, Chicago police officers conducting an unauthorized high-speed chase struck a vehicle lawfully operated by Eddie Banks Jr.,

leaving him severely and permanently injured; the City agreed to a $1.75 million settlement. Despite repeated overhauls of its pursuit policy, the City has continued to tolerate such conduct.

58.  The City's failure, despite this notice, to adequately train, supervise, monitor, and discipline its officers with respect to the use of force—including the use of vehicles as instruments of force—and with respect to the constitutional limits on seizures, caused officers, including the Defendant Officers, to understand that unconstitutional force and unlawful seizures would not be investigated, documented, or sanctioned, and were effectively condoned.

59.     The conduct of the Defendant Officers in this case—ramming a non-threatening bicyclist off his bicycle with a police vehicle without justification, order, or warning; detaining him without any lawful basis; failing to accurately document the use of force; and leaving the scene—was consistent with, and a foreseeable product of, the policies, practices, and customs described above.

60. The City's policies, practices, customs, and deliberate indifference were a direct and proximate cause of the violation of Plaintiff's constitutional rights and of his resulting injuries and damages.

61.     The City of Chicago, through the Chicago Police Department, was responsible for training its officers in the safe and lawful operation of Department vehicles, including the circumstances under which an officer may use a vehicle to stop, seize, or make physical contact with a person, and the requirements governing emergency driving and vehicular pursuits.

62. At all relevant times, the City failed to adequately train its officers in these areas, including but not limited to: (a) the safe operation of police vehicles in proximity to pedestrians and bicyclists; (b) the Fourth Amendment limits on the use of a vehicle as a means of force or as an instrument of seizure; (c) the Department's own requirements that officers activate emergency lights and sirens, notify the Office of Emergency Management and Communications, and permit marked units to take the lead before initiating a vehicular pursuit; and (d) alternatives to using a vehicle to stop or apprehend a person who poses no immediate threat.

63. The need for such training was obvious. For years preceding the incident described above, Chicago police officers repeatedly operated Department vehicles frequently unmarked, without activated lights or sirens, and without notifying dispatchers in a manner that struck, injured, and killed members of the public on Chicago's streets and sidewalks.

64. . City's failure to train was a deliberate and conscious choice and was the moving force behind the violation of Plaintiff Marvell Barker's constitutional rights. Had the City adequately trained its officers in the safe and lawful operation of Department vehicles, the officers who struck Mr. Barker from behind—without lights, siren, or any lawful basis to seize him—would not have done so.

**COUNT V**
**Illinois State-Law Claim — Battery**
**(Against the Defendant Officers)**

Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

65. By driving a motor vehicle into Plaintiff and his bicycle, the Defendant Officers intended to and did cause harmful and offensive contact with Plaintiff's person, without Plaintiff's consent and without legal justification.

66. The Defendant Officers' conduct was willful and wanton, in that it showed an utter indifference to and conscious disregard for Plaintiff's safety.

67. As a direct and proximate result of the battery, Plaintiff suffered the injuries and damages set forth above.

## COUNT VI
### Illinois State-Law Claim — Intentional Infliction of Emotional Distress
### (Against the Defendant Officers)

Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

68. The Defendant Officers' conduct—deliberately ramming an unthreatening, unarmed bicyclist with a police vehicle, causing an open fracture, and then leaving him bleeding at the scene—was extreme and outrageous.

69. The Defendant Officers intended to inflict severe emotional distress, or knew that there was a high probability that their conduct would do so, and acted in reckless disregard of that probability.

70. The Defendant Officers' conduct in fact caused Plaintiff to suffer severe emotional distress, directly and proximately causing the damages set forth above.

## COUNT VII
### Illinois State-Law Claim — False Imprisonment
### (Against the Defendant Officers)

Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

71. By striking Plaintiff with their vehicle and thereafter directing him to remain at the scene, the Defendant Officers intended to and did restrain Plaintiff's freedom of movement and liberty against his will.

72. The Defendant Officers restrained Plaintiff without reasonable grounds to believe that he had committed an offense, and without any legal justification, authority, or process.

73. The Defendant Officers' conduct was willful and wanton, showing an utter indifference to and conscious disregard for Plaintiff's rights. As a direct and proximate result of the false imprisonment, Plaintiff suffered the injuries and damages set forth above.

## COUNT VIII
### Illinois State-Law Claim — Indemnification (745 ILCS 10/9-102)
### (Against the City of Chicago)

Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

74. Illinois law provides that a local public entity is directed to pay any tort judgment for compensatory damages for which an employee is liable within the scope of his employment.

75. The Defendant Officers committed the acts alleged herein within the scope of their employment as Chicago police officers.

77. The City of Chicago is therefore obligated to pay any judgment for compensatory damages entered against the Defendant Officers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

(a)     Compensatory damages against all Defendants in an amount to be determined at

        trial;

(b)     Punitive damages against the Defendant Officers in their individual capacities;

(c)     Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

(d)     An order requiring the City of Chicago to indemnify the Defendant Officers for

        any compensatory award pursuant to 745 ILCS 10/9-102; and

(e)     Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,                                     August 3, 2026

/s/ Hakeem Muhammad

_____
Hakeem Muhammad
One of the Attorneys for Plaintiff

Hakeem Muhammad
MUHAMMAD LAW CENTER
332 South Michigan Avenue, Suite 121, No. 5379
Chicago, Illinois 60604
Telephone: (504) 400-9598
Email: hakeem@muhammadlawcenter.com
ARDC No. 6343978

/s/ Dawn C. Ewing

_____
Dawn C. Ewing, Esq.
Dawn C. Ewing, Esq.
TO DEFEND IF NECESSARY, LLC
Telephone: (773) 407-9531
ARDC No.  6337649